IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CV-254-BM

| | |
|---|---|
| BRYAN KENNETH DARDEN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| FRANK J. BISIGNANO, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Bryan Kenneth Darden ("Plaintiff" or, in context, "Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). This matter is before the court on Plaintiff's brief [DE-12] ("Pl.'s Brief") seeking judgment in his favor, Defendant's responsive brief [DE-15] ("Def.'s Brief") in opposition, and Plaintiff's reply brief [DE-16] ("Pl.'s Reply"). The parties have fully briefed this matter pursuant to the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), and this case is ripe for adjudication. The parties have consented to entry of final judgment by a United States magistrate judge under 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fourth Circuit. Having reviewed and considered the record, the administrative transcript, the briefs submitted by the parties, and the applicable law, the court denies Plaintiff's brief [DE-12], allows Defendant's brief [DE-15], and affirms the final decision of the Commissioner.

## I. STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and an application for SSI on September 15, 2021, each alleging disability beginning December 1, 2019. Transcript

of Proceedings ("Tr.") 61, 72, 198-210. His claim was denied initially. Tr. 61-82, 111-20. Plaintiff filed a request for reconsideration (Tr. 121), and was denied upon reconsideration on November 3, 2022 (Tr. 83-104, 122-30). On November 30, 2022, Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"). Tr. 131-32. A hearing before the ALJ was held on July 5, 2023, at which Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. Tr. 40-60. On August 14, 2023, the ALJ issued a decision denying Plaintiff's request for benefits. Tr. 14-39.

On August 30, 2023, Plaintiff requested a review of the ALJ's decision by the Appeals Council. Tr. 192-94. On March 1, 2024, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Plaintiff then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In

2

reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity ["SGA"]," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

3

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and §§ 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Act. Tr. 35. At step one, the ALJ determined Plaintiff had not engaged in substantial gainful employment since December 1, 2019, the alleged onset date. Tr. 19.

Next, at step two, the ALJ determined Plaintiff had the following severe impairments: patellofemoral joint disease and tendinosis of the right knee; osteoarthritic changes of the left glenohumeral joint and acromioclavicular joint with a down-sloping acromion; lumbar spondylosis; and depression. Tr. 20. The ALJ also found Plaintiff had the following non-severe impairments: hyperlipidemia; alcohol use; and tobacco use. Tr. 20-21.

Yet at step three, the ALJ concluded these impairments both physical and mental, were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 22.

Applying the technique prescribed by the regulations, the ALJ found that Plaintiff's mental impairments have resulted in mild limitation in understanding, remembering, or applying

4

information; moderate limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself (the "paragraph B criteria"). Tr. 22.

Prior to proceeding to step four, the ALJ assessed Plaintiff's RFC, finding Plaintiff had the ability to perform medium work[1] with the following limitations:

> The claimant can frequently climb ramps and stairs, but occasionally climb ladders, ropes, and/or scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He cannot work in concentrated exposure to hazards like machinery and unprotected heights. He can no more than frequently interact with the general public. He can experience no more than frequent changes in the work setting. He can no more than frequently travel to unfamiliar places or use public transportation as part of his work.

Tr. 24.

In making this assessment, the ALJ found Plaintiff's statements about his limitations not entirely consistent with the medical evidence and other evidence in the record. Tr. 26.

At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of his

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. "Sitting" generally totals about 6 hours of an 8-hour workday. *Id*. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id*.

"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c), 416.967(c).

5

past relevant work as a management trainee as actually and generally performed, and in a composite position comprised of customer service representative and title clerk. Tr. 32-33.

Although the ALJ found that Plaintiff is capable of performing past relevant work, the ALJ specifically made alternative findings for step five. The ALJ found in the alternative, upon considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. Tr. 33-34.

## V. DISCUSSION

Plaintiff contends the ALJ's persuasiveness finding with respect to the prior administrative medical findings of the state agency psychological consultants is not supported by substantial evidence. Pl.'s Brief [DE-12] at 9.[2] Specifically, Plaintiff's argument relates to the ALJ's consideration of the administrative medical findings of state agency psychological consultants (i) Bonny Gregory, M.D. ("Dr. Gregory"), and (ii) Kristin Wiltrout, Ph.D. ("Dr. Wiltrout"; and together with Dr. Gregory, the "state agency psychological consultants"). Pl.'s Brief [DE-12] at 11-12.

The Commissioner counters that "[a]lthough Plaintiff argues that there were errors with the persuasiveness analysis relating to the prior administrative medical findings from Drs. Gregory and Wiltrout, he acknowledges that the ALJ addressed the most important factors of supportability and consistency." Def.'s Brief [DE-15] at 9. The Commissioner also contends that "Plaintiff overstates the alleged inconsistency of the ALJ's analysis and underestimates this Court's ability to follow the ALJ's reasoning in reaching his findings." *Id.* at 9.

---

[2] Except for citations to the Transcript of Proceedings ("Tr."), all citations to documents using the docket entry number [DE-] provided in the court's docket will specify the page number automatically assigned by the CM/ECF system, rather than the page number, if any, specified in the original document.

6

Under 20 C.F.R. § 404.1520c and 416.920c, for claims filed on or after March 27, 2017, as here, the Social Security Administration ("SSA") "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the regulations provide five factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings, the five factors being: "(1) Supportability . . . (2) Consistency . . . (3) Relationship with the claimant . . . (4) Specialization . . . [and] (5) Other factors . . . that tend to support or contradict a medical opinion or prior administrative finding." *Id. §§* 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The regulations specify that supportability and consistency are the most important factors in the evaluation. *Id.* §§ 404.1520c(a), 416.920c(a).

The regulations also require that an ALJ "articulate how [the ALJ] considered the medical opinions and prior administrative medical findings in [the] case record." *Id.* In particular, the ALJ must explain how the factors of supportability and consistency were considered for a medical source's medical opinions. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ may, but is not required to, explain the remaining factors. *Id.* Additionally, among the articulation requirements is the requirement that the ALJ engage in a source-level articulation. *Id.* §§ 404.1520c(b)(1), 416.920c(b)(1). While the ALJ does not need to articulate how they considered the §§ 404.1520c(c) and 416.920c(c) factors for each individual medical opinion, the ALJ must articulate how they considered the factors for each medical source that has provided a medical opinion(s) or prior administrative medical finding(s). *Id.*

Here, the ALJ considered the state agency psychological consultants' findings in two

7

distinct sections of his written decision, (i) when assessing whether Plaintiff satisfied the paragraph B criteria (Tr. 23), and subsequently (ii) when considering the persuasiveness of the medical opinion evidence, including as the opinions relate to Plaintiff's functional limitations for the RFC (Tr. 31-32).

With respect to the paragraph B criteria, the ALJ provided the following summary of the state agency psychological consultants' relevant findings:

> The state agency reviews support the "B" criteria scores. [Dr. Gregory] reviewed the record in June 202 [sic], completing a psychiatric review technique. She assessed mild difficulties in 'understanding, remembering, and applying information' as well as in 'concentrating, persisting, and maintaining pace'. She assessed moderate difficulties in interacting with others and in adapting and/or managing oneself. She linked these to underlying 'depressive, bipolar, and related disorders' as well as 'substance addiction disorders. However, she listed neither of these as severe impairments, internally inconsistent with resulting moderate limitations . . . [Dr. Wiltrout], also a state agency psychological consultant, reviewed the record in October 2022 on reconsideration, similarly completing a psychiatric review technique. She deviated by assigning 'no' difficulties where Dr. Gregory assigned 'mild' . . . These "B" criteria ratings are generally persuasive as they are consistent with the treatment notes at the time and in the records developed closer in time to the hearing. They are consistent with his lack of treatment, sparse diagnostic acknowledgement of mental issues, admitted daily activities, lack of medication, and lack of significant mental signs among various treating sources. Both sources' conclusions are well supported by extensive references to the available medical evidence. Both drew reasonable and proportionate inferences therefrom. Both sources have subject matter specialization and a history of medical vocational analysis for the Administration.

Tr. 23.

When considering the persuasiveness of the medical opinion evidence in the context of the RFC development, the ALJ made the following assessment:

> Based on his "B" criteria scores, Dr. Gregory assessed the claimant had moderate limitations in his ability to interact appropriately with the general public. He had moderate limitations in his ability to respond appropriately to changes in the work setting, traveling in unfamiliar places, or using public transportation. He was best suited to a low stress working environment. There were no understanding and

memory limitations. There were no sustained concentration and persistence limitation . . . Dr. Wiltrout concurred. She concluded the totality of evidence in file suggests [Psychiatric Review Technique Form] as proposed is still appropriate. These were persuasive in some respects. They were somewhat vague. They did not provide proposed limitations in the vocationally relevant maximal language of a policy-compliant [RFC]. They identified the right areas of limitation but misapprehended the degree. These sources are supported by their extensive references to the record but drew somewhat disproportionate functional inferences therefrom. Both are supported by their subject matter specialization and a history of medical vocational analysis for the Administration. Even with less restrictive limitations, the underlying 'moderate' scores in the "B" criteria are still appropriate.

Tr. 31-32.

A. Consistency of state agency psychological consultants discussions

Plaintiff contends that "[t]he ALJ's treatment of the prior administrative medical findings is inconsistent which leaves the persuasiveness finding without substantial support." Pl.'s Brief [DE-12] at 13. Specifically, Plaintiff highlights that the ALJ found the state agency psychological consultants' "opinions 'generally persuasive,' 'consistent with the treatment notes,' and 'well supported by extensive references to the available medical evidence'" and "adopted the more restrictive opinion of Dr. Gregory [with respect to the paragraph B criteria]." *Id.* at 13-14 (citing Tr. 22, 23, 65, 76). Plaintiff then notes that in his second discourse on the state agency psychological consultants' opinions "the ALJ found the opinions to be 'somewhat vague' and determined Drs. Gregory and Wiltrout 'drew somewhat disproportionate functional inferences.'" *Id.* at 14 (citing Tr. 32).

Plaintiff argues that "[i]t is incomprehensible that the ALJ can find the opinions to be both consistent and well supported, resulting in them being generally persuasive; yet, later in the decision those same opinions were vague, and overly restrictive." Pl.'s Brief [DE-12] at 13. The court finds no difficulty in comprehending that an ALJ can find medical opinions "generally

9

persuasive" (Tr. 23) as they relate to certain findings in his decision, yet "vague" and "misapprehend[ing] the degree [of limitations]" (Tr. 32) as they relate to other findings in his decision. The ALJ does not claim that the state agency psychological consultants' opinions were "generally persuasive" in their entireties, but expressly states that "*[t]hese 'B' criteria ratings* are generally persuasive . . ." Tr. 23. Conversely, the ALJ finds that state agency psychological consultants' opinions were "persuasive in some respects . . . [but] somewhat vague" as they applied to Plaintiff's (*see* Tr. 69, 80, 91, 102) "limitations in his ability to interact appropriately with the general public"; "limitations in his ability to respond appropriately to changes in the work setting, traveling in unfamiliar places, or using public transportation"; and need for "a low stress working environment." Tr. 32. To clarify that this limited persuasiveness finding does not undermine the ALJ's earlier findings on the paragraph B criteria, the ALJ explains that "[e]ven with less restrictive limitations, the underlying 'moderate' scores in the 'B' criteria are still appropriate." *Id.*

Plaintiff contends that additional confusion arises from the fact that the ALJ found that the state agency psychological consultants "'misapprehended the degree of limitations" but then "adopted the more restrictive degree of limitation opined by Dr. Gregory, despite a less restrictive degree of limitation being opined by Dr. Wiltrout." Pl.'s Brief [DE-12] at 17-18. The confusion can again be readily resolved by noting that the ALJ adopted the more restrictive limitation of Dr. Gregory in the context of the paragraph B criteria ratings (*see* Tr. 65, 76), yet found that the state agency psychological consultants misapprehended the degree of limitations in the context of Plaintiff's adaptation limitations related to the ALJ's findings on the RFC limitations. *See* Tr. 32; *see also* Tr. 69, 80, 91, 102.

In his reply, Plaintiff reasons that "[t]here is a clear link between the 'paragraph B' criteria ratings and the RFC assessment" and that "the ALJ's handling of the medical opinions at both steps should also be read together as part of the whole decision." Pl.'s Reply [DE-16] at 2. While Plaintiff is correct that the ALJ's decision must be read as a whole, there is no reason an ALJ may not find one portion of a medical opinion persuasive with respect to certain portions of the ALJ decision, while at the same time finding other portions of the medical opinions less persuasive for other portions of his decision. *See Turner v. Comm'r of Soc. Sec.*, No. 23-1760, 2024 WL 2764722, at *5 (4th Cir. May 30, 2024) ("ALJs are not required to accept all components of a witness' discussion about a claimant's limitations just because the ALJ finds them to be generally persuasive."); *see also See Morgan v. Colvin*, No. 5:15-CV-00266-D, 2016 WL 4217822, at *5 (E.D.N.C. July 21, 2016) ("It is well-settled that in according significant weight to a medical opinion, an ALJ is not bound to accept or adopt all the limitations set forth therein.") (collecting cases), *report and recommendation adopted*, No. 5:15-CV-266-D, 2016 WL 4218333 (E.D.N.C. Aug. 9, 2016); *Vanderpool v. Berryhill*, No. 5:18-CV-44-RJ, 2019 WL 118414, at *4 (E.D.N.C. Jan. 7, 2019) ("[T]he law does not require the RFC to mirror a medical opinion; rather, the ALJ must consider the record as a whole.").

Finally, the court notes that the ALJ adopted the more restrictive paragraph B criteria scores of Dr. Gregory although he found Dr. Gregory's failure to list "depressive, bipolar, . . . related disorders . . . [and] substance addiction disorders" as severe impairments was "internally inconsistent with resulting moderate limitations." Tr. 23. First, it is unclear what prejudice Plaintiff faces by the ALJ, even mistakenly, adopting more restrictive findings from a medical opinion than the ALJ's discussion of such opinion would indicate. Second, even though both state

11

agency psychological consultants listed "depressive, bipolar, . . . related disorders . . . [and] substance addiction disorders" as non-severe impairments (Tr. 64, 75, 86, 97), the ALJ resolves this inconsistency in his decision by assessing depression to be a severe impairment and explaining why he found Plaintiff's "alcohol use, sometimes classified as either dependency or a use disorder," to be non-severe (Tr. 20).

Accordingly, the court does not find that any of the ALJ's discussion of the state agency psychological consultants' opinions requires remand.

**B.     Low stress working environment**

Plaintiff additionally argues that "[t]he ALJ's characterization of the opinions as vague is especially disingenuous [because] both Drs. Gregory and Wiltrout explained that Plaintiff, 'is best suited to a low stress working environment.'"[3] Pl.'s Brief [DE-12] at 14. Plaintiff notes that while "a low stress working environment is not a defined term in the regulations, . . . 'myriad cases in this district have noted that ALJ[s] frequently, and without error or objections, define low stress work as work not requiring fast-paced production or rigid quotas.'" *Id.* at 14 (quoting *Brandon P. v. O'Malley*, No. 1:23CV14, 2024 WL 1211055, at *6 (M.D.N.C. Mar. 21, 2024)). Plaintiff then cites numerous cases where an ALJ defined a low stress environment. *See id.* at 14-15 (collecting cases).

Plaintiff correctly notes that "'no . . . regulatory definition exists, . . . for the term[] 'low stress.'" *Sharon H. v. Saul*, Civil Action No. 3:18-cv-00111, 2020 U.S. Dist. LEXIS 200419, at *8 (W.D. Va. July 22, 2020) (internal citations omitted). Indeed, courts in this circuit have regularly

---

[3] Plaintiff notes that "[p]resumably, as the ALJ did not specifically indicate, it was this phrase that the ALJ found to be vague." Pl.'s Brief [DE-12] at 14. The court finds that even focusing on the phrase "low stress working environment" as Plaintiff does, Plaintiff's arguments are unpersuasive for the reasons discussed herein.

12

remanded cases, where an ALJ provides an RFC requiring a low stress work environment, yet fails to include additional "descriptors" to explain the intended contours of the limitation. *See Christina H. v. Comm'r, SSA*, Civil Action No. ADC-19-2754, 2021 U.S. Dist. LEXIS 5081, at *9 (D. Md. Jan. 11, 2021) (remanding based on an RFC that included "repetitive non-production job tasks in a low stress work environment" but no further descriptors); *Sharon H.*, Civil Action No. 3:18-cv-00111, 2020 U.S. Dist. LEXIS 200419, at *9 (remanding where the ALJ "did not [sufficiently] explain what he meant by 'low stress defined as no strict production quotas'"); *Nakia Tanisha W. v. Saul*, No. TMD 19-1134, 2020 U.S. Dist. LEXIS 78918, at *2-3 (D. Md. May 5, 2020) (remanding where the RFC limited the claimant to "simple, routine, repetitive tasks in a low stress environment, defined as no strict production quotas, with only occasionally interacting with the public, coworkers, and supervisors" but did not further define "no strict production quotas.").

Plaintiff's argument here defeats itself. In the cases cited by Plaintiff and those cited by the court above, the "low stress working environment" required further definition to explain what specific characteristics such an environment must have. Here, the state agency psychological consultants do not provide any further explanation as to what they meant when they recommended "a low stress working environment." Tr. 70. The fact that other ALJs have defined "a low stress working environment" as "work not requiring fast-paced production or rigid quotas," or in similar terms, *Brandon P.*, No. 1:23CV14, 2024 WL 1211055, at *6, does not mean that the ALJ was required to do so absent further explanation by the state agency psychological consultants. This fact suggests that the term "low stress working environment" standing alone is considered sufficiently vague to warrant further explanation. The state agency psychological consultants' failure to include any such further explanation supports the ALJ's determination that the opinions

13

were "somewhat vague" in this regard. Tr. 32. This court has previously upheld ALJ decisions to reject opinions that are "vague and not clearly defined." *See Willis v. Kijakazi*, 2022 WL 4242523, at *10 (E.D.N.C. August 19, 2022) (citing cases).

Plaintiff argues that the ALJ should have explained whether the RFC's limitations in social interaction and changes in the work environment were the ALJ "attempting to put the so called 'vague' opinion into more functionally relevant terms or if the low stress limitation was simply rejected in favor of the limitations that were adopted in the RFC." Pl.'s Brief [DE-12] at 20.

As the ALJ found the state agency psychological consultants' limitation to a "low stress environment" to be "somewhat vague" (Tr. 31-32), it is unclear how the ALJ would have known whether his limitations were in furtherance of or in contradiction to the limitations that the state agency psychological consultants had in mind. Instead, the ALJ focuses his analysis on the four adaptation limitations listed in the state agency psychological consultants' opinions (Tr. 69, 80, 91, 102) and explains that the state agency psychological consultants "identified the right areas of limitation but misapprehended the degree." Tr. 32.

Plaintiff goes on to argue that "the finding that Plaintiff was capable of frequent social interaction and frequent change contrasts sharply with previously upheld definitions of a low stress work environment." Pl.'s Brief [DE-12] at 16. As an initial matter, the ALJ did not adopt a limitation to a low-stress environment and inconsistencies with the contours of such a standard in other cases are therefore moot.

Yet even addressing this argument on its merits illustrates the problems created by the vagueness of the term "low stress work environment" in this instance. If there were a generally accepted definition for "low stress work environment," as Plaintiff suggests, there would be no

14

Case 5:24-cv-00254-BM    Document 17    Filed 09/24/25    Page 14 of 17

need for further additional descriptors as all parties would know what was meant by such a limitation. Precisely because there is no such common definition, Plaintiff cannot definitively show how the RFC violates the state agency psychological consultants' limitation to a "low stress work environment." While Plaintiff cites numerous examples of low stress environments that are defined to include less than frequent social interactions and changes, there are ALJs who do not include such limitations in their definition. *See Jones v. Colvin*, No. 4:14-CV-00200-RN, 2015 U.S. Dist. LEXIS 106622, at *3 (E.D.N.C. Aug. 13, 2015) ("[A] low stress environment is further defined as work that requires no complex decision-making, constant change, or dealing with a crisis situations."); *Chad H. v. Kijakazi*, No. 22-1241-BAH, 2023 U.S. Dist. LEXIS 61632, at *4-5 (D. Md. Apr. 6, 2023) ("[A] low-stress work environment, defined as requiring only occasional independent decision making or use of work related judgment, and no responsibility for the safety of others.").

Moreover, while Plaintiff claims that "limitation[s] on decision making, as well as . . . related to fast-paced work or production quotas . . . [are] universally included in definitions for low stress work settings" (Pl.'s Brief [DE-12] at 17), Plaintiff does not cite any definitive evidence from the record indicating that he required such limitations. To the extent that Plaintiff contends that various references to "stress" throughout the record, would constitute such evidence, there is at least substantial evidence to support the ALJ's reasons for discounting such evidence. For example, while Licensed Psychological Associate Ashly Weeks ("MA Weeks") opined that Plaintiff "may have some difficulty tolerating the stress associated with day-to-day work activity, depending upon his physical limitations" (Tr. 681), the language used by MA Weeks provides substantial evidence for the ALJ's finding that this limitation "is vague, conditional, and

15

noncommittal" (Tr. 32). Additionally, while the ALJ notes Plaintiff's numerous allegations that "he cannot handle stress," the ALJ discounts these statements by noting that:

> [Plaintiff's] mental status exams are normal, and no source has described him as appearing anxious or depressed. He does not appear manic or paranoid. Speech is normal. He has been pleasant and talkative with a calm emotional status . . . Thought processes and contents are normal. Insight and judgment are normal. He is not actively delusional, paranoid, or hallucinating. He has been able to speak clearly and effectively with numerous treating sources from a variety of backgrounds without question into his basic ability to understand, communicate, or concentrate. He is able to represent his own interests with these providers without a chaperone or other special assistance.

Tr. 24.

The ALJ specifically notes an absence of anxiety and stress upon exams even in circumstances that could generally be thought to induce stress in an individual. *See* Tr. 29 ("Mental status exams were normal, even during his exposure to public spaces during various VA visits. This was remarkable given the overlapping stress of multiple painful musculoskeletal impairments.").

"[R]eading the ALJ's decision as a whole, the ALJ built the requisite, accurate and logical bridge from the evidence in the record to his finding as to [P]laintiff's [RFC]." *Emanuel v. Saul*, No. 7:19-CV-202-FL, 2021 WL 1217309, at *4 (E.D.N.C. Mar. 31, 2021); *see also Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020). The court is not "left to guess about how the ALJ arrived at his conclusions [about Plaintiff's] ability to perform relevant functions . . . ." *Mascio*, 780 F.3d at 637; *see also Dennis v. Berryhill*, 362 F. Supp. 3d 303, 310 (W.D.N.C. 2019). The ALJ's RFC assessment was supported by substantial evidence in the record. Accordingly, remand is not required for this issue.

## VI.  CONCLUSION

For the reasons stated above, the court denies Plaintiff's brief [DE-12], allows Defendant's brief [DE-15], and AFFIRMS the final decision of the Commissioner.

SO ORDERED, this 24th day of September, 2025.

_____
Brian S. Meyers
United States Magistrate Judge